No. 21,223.

THE STATE OF KANSAS, *Appellee,* v. FELIX ORTH, *Appellant.*

SYLLABUS BY THE COURT.

STATUTORY RAPE—*Evidence—Instructions.* In a prosecution for statutory rape the evidence and instructions are examined, and it is held that the evidence is sufficient to sustain the conviction, and that the instructions are not subject to the general criticisms leveled against them.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed June 9, 1917. Affirmed.

*W. P. Campbell,* and *Dempster O. Potts,* both of Wichita, for the appellant.

*S. M. Brewster,* attorney-general, *Ross McCormick,* county attorney, and *John W. Adams,* of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Felix Orth was charged with statutory rape and convicted on each of four counts in the information. The court sentenced him to the reformatory at Hutchinson for a period of from five to twenty-one years on each count, the sentences to run concurrently. He appeals.

Lena Hermes, the prosecuting witness, is the daughter of a family living in the same neighborhood with the defendant's family. The parents are prosperous farmers and neighbors; the families attend the same Catholic church, and until the charge was made against the defendant were on friendly terms. The young people attended the same social affairs, and Felix had been keeping company with Lena from some time in the summer or fall of 1914, calling upon her at her home, taking her to parties, and driving around with her at night. On March 30, 1915, she was eighteen. On November 11, 1915, she gave birth to a child. Until the physician came none of the family or friends knew her condition. She told the doctor that Felix Orth was the father of the child. The doctor and her father went to the Orth's late that night and informed the father of Felix. / The young man was sent for and was severely censured by his father for his conduct. He went with the doctor to the home of the prosecuting witness and talked to her alone. She testified that he promised to marry her as soon as she had recovered. He admitted the promise, but said that after thinking about the dates when he was with Lena and what the doctor had told him about the child he concluded he was not its father, and decided not to comply with his promise. He left home and went to Oklahoma. Lena's brother followed him there, compelled him to return, and he was arrested.

The doctor's testimony is that he said to the defendant, " 'Felix, Lena Hermes is the mother of a little child, and she accuses you of being the father.' He said, 'Well, that can not be, because it can not be more than eight months, possibly eight and a half months.' I says, 'you admit you had intercourse?' He said, 'Yes.' " He testified further that Felix's father said in the presence of Felix, "It surprised me that he was hanging around there for so long, and then quit all of a sudden," and that after calling his son hard names he said, "He has got to marry her." The doctor, when asked about the

development of the child, answered that as near as he could judge "it was about three or perhaps four weeks less than nine calendar months."

As to the conversation with the doctor, the defendant testified:

"When they came over there the doctor asked me if I had intercourse with her, and I told him yes. He asked me how long ago, and I said about six or seven months. Well, he says, that would make it just about right, or something like that. I was so scared I did n't know."

He admitted having sexual relations with the prosecuting witness on three different occasions, but denied that he had such intercourse before Easter, 1915, and said he had figured from that time that the child could not be his, because the doctor had said that it was about an eight-months baby. The evidence was conflicting; but apparently the jury refused to accept defendant's version as to his relations with the prosecuting witness. We are satisfied that there was sufficient evidence to sustain the judgment.

A general complaint is made of the instructions which relate to reasonable doubt and to the credibility of the witnesses. These instructions were what may be termed stock instructions given in every criminal case. They are criticised in the brief from various philosophical and psychological viewpoints. No authorities are cited, and it is not deemed necessary to comment upon the criticism of instructions which have so often been approved.

Complaint is made of an instruction in which the court, after stating the date when the prosecuting witness gave birth to the child, used this language:

"The question therefore is, who is the father of this child? Evidence has been introduced tending to show that about the time she became pregnant she had sexual intercourse with persons other than Felix Orth, who denies that he had sexual intercourse with her at that time. The evidence as to her having sexual intercourse with persons other than Felix Orth was introduced solely for the purpose of showing who was the father of her child and whether Felix Orth had sexual intercourse with her before she became eighteen years of age."

In this instruction the court charged that "the fact, if it is a fact, that others had sexual intercourse with her before that age, would not be an excuse" or a defense for the defendant.

This instruction is complained of because it is said that it "sent the jury off on a cold trail, and they never got back"; that the parentage of the child was not the controlling question in the case; and it is further contended that the instruction misstates the facts as to the evidence, because the court ruled out all testimony offered by defendant for the purpose of showing that the prosecuting witness had sexual intercourse with other persons.

It seems the court did rule out all direct evidence of that character, although attempts were repeatedly made to get it into the record; and one witness for defendant testified to conduct of the prosecuting witness, the only purpose of which was to raise a doubt in the minds of the jury as to her chastity and her relations with persons other than the defendant. The same witness testified that the brother of the prosecuting witness had threatened to see that the witness was sent to the penitentiary if he went on the stand and swore that he had had intercourse with her. We think the court did not err in referring in the instruction to this character of testimony. As to the first criticism of the instruction, it is true that the parentage of the child was only incidentally a question in the case; but it is obvious that the jury could not have been misled by the instruction.

The court instructed that "the uncorroborated testimony of the prosecuting witness, Lena Hermes, if it is uncorroborated, is sufficient, if believed by the jury, to convict the defendant." The instruction was a proper one, and besides, the evidence of the prosecuting witness was corroborated to some extent by the admissions of defendant as to his relations with her and admissions made by him in the presence of other persons, as well as by other circumstances in the case.

We find no error in the instructions, in the admission of evidence, nor in the ruling of the court excluding the testimony of other young men in the neighborhood who were asked about their relations with the prosecuting witness.

The judgment is affirmed.